IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03249-PAB

JAMES HENRY KOSKINAS, II,

       Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

       Defendant.

_____

**ORDER**

_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff James Henry Koskinas, II on November 18, 2019.  Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying his claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383(c).  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I.  BACKGROUND

On September 28, 2016, plaintiff applied for supplemental security income under Title XVI of the Act.  R. at 19.  Plaintiff alleged a disability onset date of January 2, 2016.  *Id.*  After his claims were initially denied on May 22, 2017, plaintiff requested a hearing before an administrative law judge ("ALJ").  *Id.*

On December 26, 2018, the ALJ issued a decision denying plaintiff's claim.  R. at

_____

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

16.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the onset date and had the following severe impairments: degenerative disc disease of the thoracic and lumbar spine with stenosis, loss of visual acuity in the left eye, and degenerative joint disease of the left knee.  R. at 21.  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, 416.926.  R. at 23.  The ALJ also found that plaintiff suffers from diabetes and hypertension, but determined that those impairments are managed medically and have not caused even slight functional limitation for any continuous period of twelve months to be severe.  R. at 21.  Additionally, the ALJ determined that plaintiff has a non-severe impairment of depression.  *Id.*  Ultimately, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work except that:

> he is limited to occasionally lifting twenty pounds frequently ten pounds. He can sit for six hours in an eight-hour day.  He can stand and walk for two hours in an eight-hour day.  He requires the use of a hand-held assistive device, such as cane, for uneven terrain or prolonged ambulation.  He can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds.  He can occasionally stoop, crouch, kneel, and crawl.  He cannot tolerate exposure to extreme cold.  He cannot work around unprotected heights or around moving and/or dangerous machinery.  He has no capability of near or far acuity with the left eye.  He can occasionally use depth perception.  He requires a sit-stand option at will to change from standing to sitting, or vice-versa, approximately three times per hour; however, in doing so he would not be off task more than 10 percent of the day.

R. at 24.  The ALJ determined that plaintiff is unable to perform any past relevant work. R. at 28.  The ALJ determined, however, that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  R. at 29.

2

On October 2, 2019, the Appeals Council denied plaintiff's request for a review of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v.*

*Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(1)–(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

4

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff raises four objections to the ALJ's findings: the ALJ erred (1) at step three in finding that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (2) in finding that plaintiff had an RFC to perform a light range of work; (3) in weighing the credibility of plaintiff's treating physicians and the state medical consultant; and (4) in discounting plaintiff's subjective allegations.  *See* Docket No. 12 at 15.

### A.  Step Three

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Plaintiff has the burden at step three of demonstrating that his impairments meet all of the criteria in a particular listing.  *Riddle v. Halter*, 10 F. App'x 665, 667 (10th

Cir. 2001) (unpublished) (citation and quotation omitted).

The ALJ determined that the closest listing to plaintiff's knee impairment is Listing 1.02.  R. at 23.  Listing 1.02(A) describes "[m]ajor dysfunction of a joint(s) (due to any cause)" and requires, in relevant part, "findings on appropriate medically acceptable imaging of joint space narrowing" and "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively."  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02(A).  In order to ambulate effectively, "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches[,] or two canes."  *Id.* § 1.00B2b(2); *see also Chapman v. Saul*, No. 19-cv-00004-PAB, 2020 WL 7022353, at *3 (D. Colo. Nov. 30, 2020).

The ALJ found that plaintiff did not meet Listing 1.02 because "there is not any medical evidence to suggest that the claimant's condition causes the inability to ambulate effectively."  R. at 23.  This is because, while plaintiff testified that he has a prescription for walker, he does not use the walker continuously and sometimes uses a cane, R. at 51, goes to the grocery store once or twice a week and leans on a shopping cart, R. at 51, 59, and mows his lawn with a push lawnmower.  R. at 308.  Therefore, the ALJ determined that the record reflects that plaintiff uses the walker "for a portable seat and not as a walker," meaning that plaintiff has not shown that he does not have the ability to travel without assistance.  R. at 23

6

Plaintiff contends that the ALJ's determination that there was no medical evidence to suggest that plaintiff's condition caused an inability to ambulate effectively was in error because plaintiff met Listing 1.02.  Docket No. 12 at 18–19 (citing R. at 23–24).  Plaintiff argues that his inability to ambulate effectively is supported by treating physician Dr. John Thomas's opinion that plaintiff would need an "assistive device for long distances and uneven terrain" and by treating physician Dr. Shane Richardson's instructions to use the walker outside the home to allow further mobility.  *Id.* at 19.

Plaintiff also contends that he met Listing 1.04.  *Id.*  Listing 1.04 describes "[d]isorders of the spine . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.  Listing 1.04(A) requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  § 1.04(A).  Listing 1.04(B) requires "spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours."  *Id.* § 1.04(B).  Listing 1.04(C) requires lumbar spinal stenosis[2] resulting in an inability to ambulate effectively.  *Id.* § 1.04(C).

Plaintiff argues that the ALJ erred by finding that there was no evidence of motor

---

[2] Stenosis is "[a] stricture of any canal or orifice."  Stedman's Medical Dictionary stenosis (28th ed. 2006).

loss with atrophy and that "the impingement found in the MRI imaging did not result from spinal stenosis or arachnoiditis."  Docket No. 12 at 19.  Plaintiff also argues that there is imaging documentation of "severe lumbar stenosis evidence of weakness and an inability to ambulate effectively," which makes the ALJ finding that plaintiff did not meet or medically equal Listing 1.04 in error.  *Id.* at 20.  Furthermore, plaintiff states that "MRI imaging establishes that [plaintiff] suffers from congenital spinal stenosis with diffuse epidural lipomatosis from L3 to L5" and "a bulging disc and facet hypertrophy and right foraminal disc extrusion at L3–4 with moderate to severe foraminal narrowing on the right and moderate to severe canal stenosis and a large broad-based posterior disc protrusion with annular tear at L4–5 with severe canal stenosis and severe foraminal narrowing bilaterally."  *Id*.  Plaintiff states that this and other medical evidence satisfies the requirement for Listing 1.04.  *Id.*

The Court finds that the ALJ's determination is supported by substantial evidence in the record and not overwhelmed by contrary evidence.  *See Musgrave*, 966 F.2d at 1374.  As to Listing 1.02, ineffective ambulation means "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. § pt. 404, subpt. P, App. 1, § 1.00(B)(2)(b)(1).  Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches[,] or two canes."  *Id.* at § 1.00(B)(2)(b)(2).  There is substantial evidence that, while plaintiff was prescribed a walker, he does not always use his walker and sometimes only uses a cane.  *See, e.g.*,  R. at 51 (testifying that he sometimes uses a cane); R. at 59

8

(testifying that he is able to go shopping); R. at 308 (evidence of mowing his lawn with a push lawnmower); R. at 314, 316, 357–59, 368–69, 551 (walking without assistance at medical appointments, stepping onto exam table, ambulating around an exam room without a cane and with a cane).  The fact that Dr. Richardson prescribed plaintiff a walker and instructed plaintiff to use the walker when outside the home, thus, does not "overwhelm" the instances of plaintiff not using the walker and ambulating effectively with a cane.   Moreover, the Court agrees with defendant that a plaintiff cannot meet a listing "if the criteria are intermittently at Listing-level severity, as they were here."  *See* Docket No. 15 at 7–8 (citing *Davison v. Colvin*, 596 F. App'x 675, 678 (10th Cir. 2014) (unpublished)).  Since plaintiff did not use the walker as prescribed, he cannot show that he was unable to ambulate effectively at all times and therefore does not meet the requirements of Listing 1.02.

As to Listing 1.04, the Court finds that the ALJ's determination that there is no evidence of motor loss atrophy, which is required by the Listing, to be consistent with the record, and plaintiff provides no contrary evidence in the record that could establish motor loss atrophy.  *See generally* Docket No. 15.  Rather, a 2017 examination showed full strength, normal muscle bulk and tone, and a straight leg test was "negative bilaterally."  R. at 368.

### B.  RFC Determination

The ALJ considered four factors that led him to the conclusion that plaintiff is less limited than alleged and is capable of work that is consistent with the RFC.  R. at 26.  First, plaintiff admitted that his treatment has helped his pain and joint mobility.  *Id.*

Second, plaintiff testified that he was born with canal stenosis and that it has been a "pretty steady" problem since childhood, meaning that plaintiff did not stop working due to medical factors. *Id.* Third, plaintiff "made some admissions" that support the RFC, including that he is able to sit for two to three hours at a time and that he spends his days buying and selling coins on eBay, which supports the sitting restriction noted in the RFC, and that he cares for his 70-pound dog, which suggests that he can stoop and crouch regularly. *Id.* Moreover, as discussed with respect to the Listings, the record indicates that the prescription for the walker is "not necessarily proof that it is needed constantly for walking." *Id.* Fourth, the record establishes "left eye vision loss as the claimant described." R. at 27. Plaintiff admitted that he is able to drive during the day in good weather despite his vision loss simply by keeping his left eye closed and that he "recently renewed his driver's license," which supports the RFC vision limitations. *Id.*

Plaintiff argues that the ALJ erred in determining plaintiff's RFC. Docket No. 12 at 22. As to the first factor, the ALJ "claimed that [plaintiff] admitted his treatment had helped his pain and joint mobility," yet, according to plaintiff, the record shows that his knee "no longer locks up on him" because "he has avoided using it." *Id.* The ALJ relied on plaintiff's statement that steroids have been "fantastic" for him and have increased his mobility and ability to use his joints. *Id.* Yet, plaintiff argues, the medical record "clearly demonstrates the steroid infections are short-term treatment and that long-term treatment was not medically recommended." *Id.*

The Court finds substantial evidentiary support for the ALJ's conclusion on the first factor. It is not wholly correct that plaintiff has avoided using his knee since his

January 2016 surgery, *see* R. at 53, as plaintiff appears to ambulate without a cane and complete other activities that require the use of his knee. *See, e.g.*, R. at 58–59, 308, 316, 368. Additionally, as to plaintiff's concerns that steroids are a short-term treatment, plaintiff provides no evidence that the steroid injections are not suitable for longer-term use. In fact, the medical record evidence indicates that such treatment may be suitable for long-term use. R. at 376 ("I would recommend that we get you in to see someone who can do steroid spinal injections to get you some more long term relief."); R. at 54 (testifying that steroids have "completely changed everything" and are "absolutely fantastic."); *id.* (testifying that "I'm doing much better than I was now that I'm getting medication."); R. at 60 (testifying that "[t]he prednisone has helped immensely.").

As to the second factor, plaintiff argues that the ALJ failed to note that the record evidence establishes that plaintiff's stenosis pain has been unbearable since childhood, and the fact that he was born with stenosis "does not support a finding that he had the capacity to stand two hours." Docket No. 12 at 23. The evidence establishes, plaintiff argues, that he could not work without accommodation and that he resorted to self-employment in a sedentary job so that he had control over sitting, resting, and standing. *Id.* The ALJ, however, noted that plaintiff has complained of long-term pain. *See* R. at 25. Furthermore, the fact that plaintiff was able to be self-employed in a sedentary job that permitted him at-will options to sit and stand indicates that an RFC that takes these needs into account would be appropriate. The RFC here provides plaintiff a "sit/stand option at will," just as plaintiff enjoys in his current self-employment. *See* R. at 24. Further indication that the RFC is supported by substantial evidence in the record is found in plaintiff's testimony that he is able to "spend two or three hours at a time

sitting," R. at 61, which is the same limitation found in the RFC.  R. at 24.

As to the third factor, plaintiff argues that the evidence establishes that plaintiff uses his walker if he needs to walk somewhere, but can use his cane if all he needs to do is lean.  Docket No. 12 at 23–24.  Furthermore, even when at home selling coins on eBay, he must stretch two to three times per hour.  *Id.* at 23.  The Court finds that plaintiff's admission that he sometimes relies only on a cane supports the ALJ's finding that plaintiff does not have an inability to ambulate effectively.  Additionally, plaintiff's need for frequent stretching and for an assistive device are supported in the RFC, which, again, provides at-will sit/stand options at two to three times per hour, consistent with plaintiff's described limitations and current practices.  R. at 24.[3]

The Court therefore finds that the ALJ's RFC determination is supported by substantial evidence in the record.  The ALJ noted plaintiff's limitations, but determined that they were not completely disabling.  R. at 24–28.  Moreover, the RFC is a determination of what a complainant can do *despite* impairments and limitations.  20 C.F.R. § 404.1545(a)(1).  While plaintiff suffers from degenerative changes in his knee and back, *see, e.g.*, R. at 350–53, and pain, *see, e.g.*, R. at 547, the evidence indicates that plaintiff's pain is not debilitating, R. at 548, 558, that he uses a cane, R. at 551, and that he does not have any substantial gait problems.  R. at 565.  Furthermore, plaintiff sometimes does not need to use his walker.  R. at 51.  He is able to care for his 70-

---

[3] The ALJ's conclusion, plaintiff argues, also belies the opinions of Dr. Thomas and Dr. Richardson and the instructions of Dr. Richardson, which are that plaintiff needs an assistive device for long distances and uneven terrain and that plaintiff should use a walker with a seat when outside his home.  Docket No. 12 at 24.  The Court considers these arguments in the following section.

pound dog.  R. at 58–59.  He uses a push lawnmower.  R. at 308.  While he has trouble

clipping his nails, he is able to cook, dress, and bathe independently.  R. at 358.  An

examination in 2017 showed only moderate difficulty squatting, rising, and getting up

and down from the exam table.  R. at 368.  This examination also showed normal range

of motion except for plaintiff's back, full strength, and the ability to rise from a seated

position without assistance.  *Id.*  The Court finds that these limitations are accurately

reflected in the RFC.  *See* R. at 24.  Additionally, the evidence is consistent that

plaintiff's pain is managed by steroids and injections.  *See* R. at 52, 54, 376.  The

record also establishes that plaintiff worked for many years with the same level of pain

that he experiences now.  *See* R. at 46, 60–61, 172.

## C.  Credibility

The ALJ must give consideration to all of the medical opinions in the record.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R.

§§ 404.1527(c), 416.927(c)).  The ALJ must also explain the weight he assigns to such

opinions.  *Id.* (citations omitted).

### 1.  The Treating Physician Rule

The opinion of a treating physician is generally entitled to greater weight than

that of a non-treating physician because of the unique perspective derived from a

treating relationship.[4]  20 C.F.R. § 404.1527(c)(2).

---

[4] In 2017, the rules were changed to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 404.1520c. Because plaintiff's claim was filed before March 27, 2017, the former regulations apply.  *See id.* § 404.1527 ("Generally, we give more weight to medical opinions from . . . treating sources.").

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry. In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining the proper weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v.*

*Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted).

Plaintiff argues that the ALJ "ignore[d] the opinions of Drs. Thomas and Richardson and the instructions of Dr. Richardson." Docket No. 12 at 24. Additionally, plaintiff claims that the ALJ erred in "adopting the opinion of an agency non-examining doctor and according no weight to the opinion of an examining source" in formulating the RFC, *id.* at 24, and "violated SSA regulations in failing to accord deferential weight to the opinions of treating doctors." *Id.* at 26. Plaintiff also argues that the regulations require that the ALJ give greater weight to the opinion of an examining source over that of a non-examining source, yet, plaintiff argues, the ALJ's findings were "based entirely on the opinion of a non-examining agency doctor who simply reviewed the medical records." *Id.* at 25 (citing *Bryant v. Comm'r of Social Sec. Admin.*, 753 F. App'x 637, 640 (10th Cir. 2018) ("The ALJ must [be] mindful that an examining sources opinion is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." (citation and quotations omitted)).

The Court disagrees. The ALJ explained why he gave Dr. Thomas's opinion only limited weight. R. at 28. Dr. Thomas opined that plaintiff "can be expected to sit 45 minutes, stand 5 minutes, at a time in an 8-hour work day before requiring a break due to possible bulging discs and stenosis," that plaintiff "does need an assistive device

15

with regards to long distances," that "[t]here are limitations on bending, stooping, crouching, squatting . . . and [plaintiff] will not be able to perform these with any regularity."  R. at 370.  The ALJ discounted Dr. Thomas's opinion because Dr. Thomas's own findings tend to contradict the "extreme limitations" he described, as Dr. Thomas concluded that plaintiff has intact strength, neurological function, normal muscle bulk and tone, and only restricted range of motion in plaintiff's spine.  R. at 28 (citing R. at 365–70).  Moreover, the ALJ determined that Dr. Thomas's 45-minute sitting limitation contradicted plaintiff's own testimony that he could sit for two or three hours with periodic breaks.  *Id.*  While the ALJ therefore gave Dr. Thomas's opinion "limited weight," *see id.*, Dr. Thomas's opinion is actually in some ways less restrictive than plaintiff's testimony and the RFC.  The RFC and plaintiff's testimony state that plaintiff needs breaks to change positions and stretch approximately two to three times per hour, *see* R. at 24, R. at 63, or every 20 to 30 minutes; however, Dr. Thomas opined that plaintiff could sit for 45 minutes before needed a break.  R. at 370.

In addition, the ALJ noted that plaintiff contradicted Dr. Thomas's conclusion because plaintiff did not appear at Dr. Thomas's examination with an assistive device, which undermined Dr. Thomas's conclusion that plaintiff could not stand or walk more than five minutes in an eight-hour day.  *See* R. at 28; *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1078–79 (10th Cir. 2007) (ALJ reasonably discounted a treating physician's opinion which was inconsistent with other evidence); *see also Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) ("The ALJ's finding that Dr. Summerlin's restrictions on standing and walking were inconsistent with his own examination findings is a good

reason for giving that medical opinion only moderate weight."); *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming the ALJ's decision discounting the treating physician's opinion where the doctor's treatment note from the same day was inconsistent with the doctor's opinion). The ALJ also gave Dr. Thomas's opinion less weight because the ALJ found that it conflicted greatly with the state agency medical consultant, Dr. Roy C. Brown. R. at 28; *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence).

The Court concludes that the ALJ adequately explained the weight given to Dr. Thomas's opinions, and the ALJ's decision to afford Dr. Thomas's opinions limited weight was supported by substantial evidence. The ALJ considered the relevant factors discussed in *Langley* and gave "good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (citation and quotations omitted).

The ALJ did not, however, discuss the weight afforded to the opinions of Dr. Richardson or Dr. Settles. The regulations require an ALJ to "consider all evidence in [the] case record when [making] a determination or decision whether [plaintiff is] disabled." 20 C.F.R. § 404.1520(a)(3). To demonstrate compliance with this requirement, an ALJ need not discuss every piece of evidence in his decision, but must, at minimum, discuss "the evidence supporting his decision" and "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he

rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (holding ALJ erred by ignoring evidence that would support disability finding while highlighting evidence favorable to finding no disability).  When an ALJ decides to disregard a medical report by a claimant's physician, she must set forth "specific, legitimate reasons" for her decision.  *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)) (further quotations omitted).  An ALJ's failure to discuss and weigh a medical source opinion is harmless error "if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."  *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014).

There is no question that plaintiff has serious health limitations that clearly impact his life.  The question is whether the limitations are so great that plaintiff is permanently disabled.  *See Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (upholding ALJ determination that did not state an opinion on two reports by plaintiff's caregivers because "[t]here is nothing to show that the ALJ failed to properly consider these records," and neither record reached or supported a conclusion of disability).

Here, while the ALJ did not mention Dr. Richardson by name, the ALJ did discuss Dr. Richardson's prescription of a walker for plaintiff. *See* R. at 23–25.  Thus, plaintiff is not correct that the ALJ ignored the instruction of Dr. Richardson that plaintiff use a walker with a seat for ambulation.  *See* Docket No. 12 at 24.  Additionally, the ALJ cited extensively to Exhibit No. B17F, which are plaintiff's records from Dr. Richardson and others in his practice.  *See* R. at 25–26 (citing R. at 545–66; R. at

565–66 (listing prescriptions from Dr. Richardson)).  Moreover, plaintiff points to nothing in Dr. Richardson's records that contradicts the ALJ's determination.  In fact, as the ALJ noted, some of Dr. Richardson's opinions appear to contradict plaintiff's allegations. *See* R. at 25–26.  For instance, Dr. Richardson noted that plaintiff's spinal stenosis and bulging thoracic intervertebral disc are not chronic, *see* R. at 548, and remarked that though plaintiff's gait is bilaterally antalgic, plaintiff is able to bear full weight on both sides and uses a cane for ambulation, despite plaintiff's prescription, from Dr. Richardson, for a walker.  R. at 551.  As to Dr. Settles, whose opinion plaintiff argues that the ALJ ignored, *see* Docket No. 12 at 25, 29–30, plaintiff only cites Dr. Settles's impression that lifelong back problems have "kept [plaintiff] from doing any gainful employment."  R. at 337.  The Court finds that ALJ was not required to weigh Dr. Settles's impression that plaintiff's back problems kept him from engaging in gainful employment, *id.*, because an assertion that a claimant is unable to work is not a "medical opinion" entitled to any weight.  *See* 20 C.F.R. § 416.927(d); *see also* SSR 96-8p, 1996 WL 374184, at *7 n.8 (July 2, 1996).

The Court also finds that the ALJ's determination with respect to the weight afforded to the opinions of the state medical consultant, Dr. Brown, to be supported by substantial evidence.  *See* R. at 27.  Dr. Brown determined, among other things, that plaintiff could sit, stand, and walk six hours in eight and could occasionally stoop, kneel, crouch, and crawl.  R. at 107.  The ALJ, however, found greater restriction necessary in terms of "walking, seeing, and using an assistive device."  R. at 27.  Thus, plaintiff is not correct that the ALJ afforded Dr. Brown's opinions "controlling weight."  *See* Docket No.

12 at 30.  Plaintiff provides no argument for why the ALJ should have afforded Dr. Brown's opinion less weight, except for his insistence that the opinions of his treating physicians should have been entitled to greater weight.  *See id.*  The Court finds that the ALJ's determination that greater restriction than that proposed by Dr. Brown is supported by substantial evidence in the record.

Plaintiff claims that the ALJ failed to take into account the opinions of Dr. David Solly regarding plaintiff's complaints of pain.  Docket No. 12 at 31.  The record reflects that Dr. Solly was an examining psychologist, who stated that plaintiff's pain "may be at a severity level that would prevent [plaintiff] from working, but this should be evaluated by a medical professional."  R. at 361.  The ALJ, however, considered Dr. Solly's opinion, as he cited it in discussing plaintiff's depression, and afforded Dr. Solly's opinion, and the consistent opinion of the state agency psychologist, Dr. Gayle Frommelt, "great weight" because of their evidentiary support.  R. at 22.  While the ALJ did not specifically address Dr. Solly's comments regarding plaintiff's pain, the ALJ need not discuss every piece of evidence in order to comply with the requirement that an ALJ consider all the evidence when making a determination.  Rather, to demonstrate compliance, the ALJ must, at minimum, discuss "the evidence supporting his decision" and "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton*, 79 F.3d at 1010.  Furthermore, an ALJ's failure to discuss and weigh a medical source opinion is harmless error "if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."  *Mays*, 739 F.3d at 578–79.  Here, the ALJ discussed plaintiff's complaints of pain in great detail, *see, e.g.*, R. at 25, and Dr. Solly's conclusion that plaintiff may have

20

severe pain is consistent with the limitations set forth in the RFC.  Finally, to the extent

that Dr. Solly's opinion expresses that plaintiff is unable to work, such an opinion is

reserved for the Commissioner and is entitled to no deference.  *See* 20 C.F.R.

§ 416.927(d); *see also* SSR 96-8p, 1996 WL 374184, at *7 n.8.

Finally, plaintiff objects that the ALJ did not address a "mental therapist's opinion

concerning the side-effects of [plaintiff's] use of medical mar[j]uana."  Docket No. 12 at

31.  Plaintiff states that he revealed to the therapist that he has been using marijuana

since age 14, and the therapist "noted [plaintiff] had issues with confusion and not being

able to focus," which the therapist thought severe enough to warrant substance abuse

treatment.  *Id.* (citing R. at 269, 276–77).  Assuming that plaintiff's "mental therapist" is

sufficiently qualified to render a medical opinion or establish an impairment, the Court

agrees with defendant that plaintiff has not complained about his marijuana usage.

*See* R. at 273.  To the contrary; plaintiff credited marijuana with his ability to "get

through the day," *id.*, and stated that marijuana is the only thing that makes him "feel

any better."  R. at 272.  Plaintiff's marijuana usage, therefore, could not form the basis

of an RFC limitation, given its apparent positive effects.  The Court thus finds it was not

error for the ALJ not to consider this therapist's opinion specifically.

### D.  Subjective Allegations

Plaintiff objects that the ALJ failed to "take into consideration the limitations

resulting from the history of severe anxiety/depression in formulating the RFC."  Docket

No. 12 at 31 (citing *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013) ("[E]ven if the

ALJ determines that a claimant's medically determinable mental impairments are 'not

severe,' he must further consider and discuss them as part of his [RFC] analysis at step four.")).  Plaintiff states that he was diagnosed with "major depress[ive] disorder with symptoms of fatigue, difficulty concentrating, and extreme difficultly functioning."  *Id.* Plaintiff, however, points to no specific medical opinion that supports these diagnoses that the ALJ failed to consider.

Plaintiff also objects that the ALJ erred in determining that plaintiff's statements about the intensity, persistence, and limiting effects of his mental and physical health issues are not entirely credible given the "overwhelming medical evidence" that plaintiff argues substantiates his statements.  Docket No. 12 at 32.  Allegations that plaintiff claims that the ALJ ignored include that plaintiff "only went outside when necessary to shop and see doctors because of constant pain," that plaintiff "could only walk ten yards without a walker or shopping cart and could only stand for fifteen to twenty minutes," that his furniture at home is spread out so he is not without support.  *Id.* (citing R. at 19). Plaintiff also argues that the ALJ failed to consider the type, dosage, effectiveness, and side effects of plaintiff's medication, including that plaintiff's Percocet and morphine are "extremely strong pain medications and addictive" and that steroids are "only a short-term treatment."  *Id.* at 33.

In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

22

4. The type, dosage, effectiveness, and side effects of any medication the

individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has

received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to

relieve pain or other symptoms (e.g., lying flat on his or her back, standing

for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and

restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *see also* 20 C.F.R. § 404.1529(c)(4) ("We will

consider whether there are any inconsistencies in the evidence and the extent to which

there are any conflicts between your statements and the rest of the evidence.").  The

ALJ must set forth "the specific evidence he relies on in evaluating the claimant's

credibility," but is not required to undergo a "formalistic factor-by-factor recitation of the

evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ determined that plaintiff's depression was not severe.  R. at 21–23.

The ALJ relied on the opinions of Dr. Solly, who, as stated above, noted that plaintiff's

depression would not limit his ability to work, R. at 361, and of Dr. Frommelt, who

determined that plaintiff did not have any severe mental condition.  R. at 104.  The ALJ

afforded these doctors' opinions "great weight" because of their consistency and record

support.  R. at 22.  The ALJ also considered plaintiff's allegations of his anxiety and

depression and his ability to understand, remember, and apply information, interact with

others, concentrate, persist, maintain pace, and adapt and manage himself.  *Id.*  The

Court finds substantial support for each of the ALJ's findings in these areas and notes that the ALJ considered each of the factors in SSR 96-7p.  The ALJ determined that plaintiff has a mild limitation understanding, remembering, and applying information because the record shows no evidence of memory loss or mental health treatment for these complaints.  R. at 22.  The ALJ also considered plaintiff's allegations that he has difficulty interacting with others and plaintiff's testimony that he goes to the grocery store twice a week and has a supportive relationship with his mother.  *Id.*  The ALJ determined no more than a mild restriction in this area, *see id.*, which is supported by substantial evidence in the record.  The ALJ also found that plaintiff has a mild limitation concentrating, persisting, and maintaining pace because the ALJ did not find sustained deficits in attention and concentration, and plaintiff points to none.  *Id.*  Finally, the ALJ determined that plaintiff has a mild limitation in adapting and managing himself.  *Id.*  In rendering each of these determinations, the ALJ relied extensively on Dr. Solly's records.  Finally, as to plaintiff's concerns that the ALJ ignored the side effects of plaintiff's medication, aside from plaintiff's general allegations that he experiences severe pain and depression, plaintiff points to no record evidence of side-effects from his medications that the ALJ ignored, and the Court's review of the evidence of side effects directly tied to medications finds only slight support for plaintiff's complaints.  *See, e.g.*, R. at 312–13 (detailing plaintiff's complaints of constipation possibly tied to medications).

The Court also notes that plaintiff's subjective allegations were, at times, inconsistent with the record evidence, and the ALJ has an obligation to consider alleged

symptoms against objective evidence.  *See* 20 C.F.R. § 416.929.  The inconsistencies include, among other things, that plaintiff occasionally used a cane instead of a walker, *see, e.g.*, R. at 51, was able to easily step onto exam table and had no difficulty doing most musculoskeletal exercises, R. at 316, and showed full strength and normal range of motion except for his back.  R. at 386.  At times, plaintiff's pain was only "3/10," R. at 376, and he testified that steroids worked well to manage pain, R. at 54, and marijuana helped him greatly.  R. at 272–73.  This medical evidence undermines plaintiff's subjective allegations.  Finally, the Court notes that while plaintiff contends that the ALJ ignored certain information, the Court follows the Tenth Circuit's instruction in *Flaherty* and takes an ALJ at his word when he declares he has considered a matter.  *See* 515 F.3d at 1071.

## V.  CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED March 30, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

25